## BOARD OF EDUCATION v. BOARD OF COUNTY COMMISSIONERS OF GRANVILLE COUNTY.

(Filed 7 November, 1917.)

**1. Public Schools — High Schools — Special Tax — Statutes—Constitutional Law.**

Chapter 820, Laws 1907, and subsequent amendatory acts, under the provisions of which high schools may be established and made a part of our public-school system, under regulation and control of the public-school authorities, and extending to all portions of the State, is within the intent and meaning of our Constitution, Art. IX, sec. 1, declaring that knowledge is necessary to good government and happiness, and that "schools and means of education should be forever encouraged"; section 2, directing taxation by the Legislature "for a general and uniform system of public schools," free of charge to the children of the State, "between the ages of 6 and 21," etc.; and such act is therefore constitutional and valid.

**2. Same—Uniform System.**

The requirement of section 2, Article IX of our Constitution, that our public-school system shall be uniform by legislative authority, relates to the uniformity of the "system," and not to the uniformity of the class or kind of the "schools"; and thus qualifying the word "system," it is sufficiently complied with where, by statute or authorized regulation of the public-school authorities, provision is made for establishment of schools of like kind throughout all sections of the State and available to all of the school population of the territories contributing to their support.

**3. Same—County High Schools.**

County high schools, which are parts of our public-school system, within the meaning of our Constitution, are entitled to have a special allowance made to them in the yearly estimate of the county board of education for a four-months term (Constitution, Art. IX, sec. 3); but it is otherwise as to a school which is in strictness one of a town or city, governed by local authority and accessible only to the school population of the specified district, for such is not a part of our public-school system; and this class of

high schools may only receive their *per capita* or *pro rata* share of the estimate according to average and actual attendance and according to the provision of the statute or authoritative regulations applicable.

### 4. Same—City or Town High Schools.

The provisions of chapter 820, Laws 1907, that for towns or cities of more than 1,200 inhabitants a public high school may be approved by the county board of education, under contract, to be again approved by the State Board of Education, stipulating, among other things, that the school shall be available to students resident outside the district, etc., must be shown to exist, for such schools receive the benefit of the special tax in conducting a four-months term of the school.

### 5. Appeal and Error — Public Schools — Statute — Taxation — Questions of Law—Trials.

Where the county commissioners refuse to accept the estimate of the amount of special tax required to maintain a four-months term of its public school, under the statutory requirement that action be instituted to have the necessary amount fixed by the judge presiding in the district, etc., the conclusiveness of his finding refers to facts, strictly as such, and was not intended to uphold a finding based on erroneous legal principles, presented by exceptions duly noted.

### 6. Public Schools — Taxation—Statutes—Judicial Questions—Courts—Constitutional Law.

Where the amount required by special tax levy for the maintenance of a four-months term of public school is in dispute between the county board of education and the county commissioners, which, by proper action, is left to the determination of the judge holding the courts of the district, etc., the powers conferred on the judge is of a judicial nature to determine a disputed fact relevant to a pending issue between the two boards, to be levied and collected by the usual and ordinary administrative and executive officers of the county government, and such power does not render the statute unconstitutional.

### 7. Public Schools—Taxation—Special Tax—Constitutional Law.

The requirement of Article IX, sec. 3, of the Constitution, for a four-months term of public schools are imperative, and not restricted by section 5 as to the amount of tax levies for ordinary State and county purposes.

CIVIL ACTION, heard in GRANVILLE County on 3 August, 1917, before *Connor, J.,* holding the courts of the Tenth Judicial District.

The action was one in the nature of *mandamus* to compel defendants to lay a special tax of 10 cents on the $100 valuation as necessary to maintain the public schools of said county for a period of four months, defendants contending that a tax of 5 cents levied by them was sufficient for the purpose.

There was judgment for defendants, and plaintiffs excepted and appealed.

*B. S. Royster, Parham & Lassiter,* and the Attorney-General for plaintiff.
*Hicks & Stem* and *D. G. Brummitt* for defendant.

HOKE, J. The Board of Education of Granville County, having made their estimate of the amount of special tax required to maintain the public schools of Granville County for a period of four months at 10 cents on the $100 valuation of property, presented same to the board of commissioners, pursuant to chapter 33, section 8, Laws 1913, and the latter board, being of opinion that 5 cents on the $100 valuation was sufficient, proposed to levy this amount, whereupon the plaintiff board, as required by the said act, instituted the present action to have the amount necessary fixed and determined by the Superior Court judge presiding in the district. The cause coming on to be heard, as stated, before *Judge G. W. Connor,* holding the courts of the district, his Honor made a full and careful finding of the facts appertaining to the question, and approved the act of defendant board fixing the tax levy at 5 cents. In arriving at this conclusion his Honor eliminated an item of $1,250 demanded for the maintenance of four high schools in said county, located at Creedmore, Stem, Knap of Reeds, and Stovall, being of opinion that these schools were no part of the public-school system, and also the sum of $1,250 estimated and claimed as an amount appertaining especially to the high school in the town of Oxford, the county-seat; the findings of his Honor in reference to the four high schools first mentioned, and his conclusions thereon, being stated in the judgment, as follows: "This estimate further includes the sum of $1,250 for appropriations for high schools at Creedmore, Stem, Knap of Reeds, and Stovall. These high schools are not part of the general and uniform system of public schools required by the Constitution to be maintained in each school district in the State for a period of four months in each year, but have been established and are maintained under the provisions of the school law as State high schools, supported by funds raised by appropriations by the State and county, and funds raised by special taxes levied in the districts in which they are located, and the said sum of $1,250 should not be included in the amount required to maintain the public schools for four months, as required by the Constitution."

From this order the plaintiff board has appealed, assigning for error, chiefly, that his Honor, in determining the sum required, disallowed the amount claimed for the four schools established pursuant to the high-school law (chapter 820, Public Laws 1907) and the subsequent statutes amendatory thereof.

Considering the record in reference to the exceptions noted, Article IX of our Constitution, after declaring in section 1 that religion, morality,

and knowledge are necessary to good government and the happiness of mankind, and that schools and the means of education should be forever encouraged, in section 2 directs that the General Assembly shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all the children of the State, between the ages of 6 and 21 years; in section 3, that each county shall be divided into a convenient number of school districts, in which one or more public schools shall be maintained at least four months in every year, and if the commissioners of any county shall fail to comply with the aforesaid requirements of said section they shall be liable to indictment.

After making appropriation of certain specified funds to educational purposes, provision is made for the maintenance and management of the State University, and a State Board of Education is then created, composed of the Governor and chief executive officers of the State, of which the Governor shall be chairman and the Superintendent of Education shall be secretary, and has conferred upon it extensive powers to "legislate and make all needful rules and regulations in relation to the free schools and the educational funds of the State, subject to the supervision and control of the General Assembly, by act or resolutions duly passed."

In *Collie v. Commissioners,* 145 N. C., 170, we have held that these requirements of the Constitution as to our public-school system are imperative, and that the restrictions established by Article V as to the amount of tax levies for ordinary State and county purposes do not apply to taxation required to maintain these four-months public schools. We find nothing in this article of our Constitution, or elsewhere, which in terms restricts the public schools of the State to the elementary grades, or which establishes any fixed and universal standard as to form, equipment, or curriculum. On the contrary, in view of the prominent placing of the subject in our organic law, the large powers of regulation and control conferred upon our State board, extending at times even to legislation on the subject, the inclusive nature of the terms employed, "to all the children of the State, between the ages of 6 and 21 years of age," together with the steadfast adherence to this patriotic, beneficent purpose, throughout our entire history, it is manifest that these constitutional provisions were intended to establish a system of public education adequate to the needs of a great and progressive people, affording school facilities of recognized and ever-increasing merit to all the children of the State, and to the full extent that our means could afford and intelligent direction accomplish. Under such interpretation, the legislation of 1907 and subsequent amendatory acts, by which these four high schools and others of like kind are established and made a part of our

public-school system, is fully justified, placed as they are under the regulation and control of the public-school authorities and extending to all portions of the State which may come under its provisions.

The general principle is fully recognized with us in *Greensboro v. Hodgin,* 106 N. C., 182, and is well supported by authoritative cases in other jurisdictions. *Evers v. Hudson,* 36 Mont., 135; *Russel v. High School Board,* 97 Ill., 327; *Cook v. Board of Directors,* 266 Ill., 164; *Dickinson v. Dickinson* (Ark.), 178 S. W., 930; *Roach v. School Board of St. Louis,* 77 Mo., 484; *Koester v. Board of Commissioners,* 44 Kan., 141.

Nor is the position weakened or in any way affected by reason of the descriptive words of our Constitution, providing that our system of public schools shall be general and uniform. The term "uniform" here clearly does not relate to "schools," requiring that each and every school in the same or other districts throughout the State shall be of the same fixed grade, regardless of the age or attainments of the pupils, but the term has reference to and qualifies the word "system" and is sufficiently complied with where, by statute or authorized regulation of the public-school authorities, provision is made for establishment of schools of like kind throughout all sections of the State and available to all of the school population of the territories contributing to their support. *Ex parte Sohucke,* 148 Cal., 262; *Robinson, Treas., v. Schenck,* 102 Ind., 307; *Anderson v. Ritterbusch,* 22 Okl., 761; *S. v. Thompson,* 142 Ala., 98; *Koester v. Commissioners,* 44 Kan., *supra;* 4 Words and Phrases (2d Series), 1070.

In *Ex parte Sohucke, supra, Van Dyke, J.,* delivering the opinion, said: "A law which applies alike to all the subjects upon which it acts, or, in other words, a law which applies equally to all persons or things within a legitimate class, to which alone it is addressed, does not violate the provision requiring laws of a general nature to have a uniform operation, and is neither local nor 'special.' "

Under the legislation we are considering, these high schools, as stated, may be established in any and all portions of the State, and when established, are under the governance and control of the public-school authorities, are available to any and all members of the school population qualified to enter, in any and every county where they may be placed, and are properly a component part of the uniform system of public schools contemplated and provided for by the Constitution.

In reference to the high school in the town of Oxford, on the record as now presented, this item or claim was properly disallowed. That, being in strictness a town or city high school, governed by local authority and accessible only to the school population of the specified district, is not a part of our public-school system, within the meaning of our

Constitution, and is not entitled to have a special allowance made for it in the yearly estimate of the county board of education.

True, the high-school law referred to provides that for towns or cities of more than 1,200 inhabitants one such school may be approved by the county board of education, under contract, to be again approved by the State Board of Education, and stipulating, among other things, that the school shall be available to students resident outside of the district, but no such contract is shown to exist, and no special item for its maintenance as a high school should be recognized.

Doubtless, in districts where these localized town and city high schools are placed, and when not a part of the public-school system, within the meaning of the law as we have interpreted it, the county board of education may apportion to the school authorities of such a district their *per capita* or *pro rata* share of the public-school fund according to the provision of the statute or authoritative regulation applicable, and these authorities may not improperly allow to the high school their proper portion on such estimate according to average and actual attendance, but no additional or special item can be claimed for them as a high school, because, as stated, they are not subject to public-school authority, and are only accessible to the school population within the district. The terms of the statute under which this case was constituted in making as it does the finding of the judge conclusive as to how much is required to maintain a four-months school, refers to his finding of fact strictly as such, and does not and was not intended to uphold a finding when based on erroneous legal principles and presented by exceptions duly noted. We are not inadvertent to the position earnestly urged for defendant that the act providing for a determination of the amount required for a four-months school by the Superior Court judge is unconstitutional, in that it attempts to confer legislative powers on the courts, but we do not think the statute is open to such objection. It only empowers the courts to ascertain and determine a disputed fact relevant to a pending issue between the two boards, and thereupon command that the tax be levied accordingly, both the finding of the fact and the judgment thereon being, in our opinion, judicial in their nature. *In re Applicants for License,* 143 N. C., 1 and 6. The tax, however, is authorized, as it should be, by legislative enactment, and is to be levied and collected by the usual and ordinary administrative and executive officers of the county government.

For the error indicated, there must be a new trial on the issue, and it is so ordered.

Error.

CLARK, C. J., concurring: When the Legislature authorized the establishment of four high schools in each county, it enacted a uniform system. At first, probably, but few counties could comply to the full extent. The enactment has been in force many years, and now all but four counties out of 100 have, each, prescribed four high schools. Certainly, the system cannot be overthrown and destroyed because one or more counties have not complied with the statute. That is not a defect or invalidity in the statute, but the fault of the counties which have not complied with the law.

As the counsel for the plaintiff well said, "The public high schools are the poor man's university." They afford an opportunity for education to those who have passed through the lower grades of the public schools, but who are without means to attend the State University or other institutions of higher learning. To strike them out would be to deny the benefit of a common-school education to most of the children after the age of 15 or 16 years, when they have ordinarily completed the common-school course, and would destroy a most important part of our common-school system.

If it were possible to hold the high schools of this State invalid because four counties have not yet complied with the requirement in regard to them, it would strike a paralyzing blow at the prosperity of the State, which depends upon nothing that the State can do so much as upon our public school system.

We know by the reports of the Superintendent of Public Schools, of which this Court takes judicial notice, that the State has already invested nearly $2,000,000 in high-school buildings and property, and that more than 10,000 students, among them numbers of the brightest youths of the State, of both sexes, to whom our people look forward with hope and pride, are annually attending these institutions. What would become of this great investment, and of the opportunities now afforded more than 10,000 intelligent, ambitious, hopeful youths, if the high schools should now be struck down? The suggestion that it be done should receive but one answer—the injunction given by the Senate at Rome on more than one memorable occasion, *"Ut respublica ne quid detrimenti caperet"*—"See to it that the republic shall receive no harm."

BROWN, J., concurring: While I concur in the opinion of the Court that the so-called high schools mentioned in the opinion are a part of the common-school system, and as such come within the purview of the *Collie case,* I by no means concede that the Legislature or the board of education can establish, in their discretion, any kind of expensive educational institution in a county, and, by calling it a part of the general educational system of the State, cause it to be supported by general

taxation as the recognized common schools of the State are maintained, nor do I understand the Court to so hold.

There is nothing in this record that leads me to the conclusion that these four schools are of such an unusual and expensive character that they may not be with propriety classified as among the common schools of the county of Granville.

As I understand this case, when it is heard again in the Superior Court the presiding judge will pass on the controversy between the plaintiffs and defendants.

In my opinion, the presumption should be in favor of the correctness of the estimates of the county commissioners, and that they took into consideration the maintenance for four months of all the common schools of the county, including the four schools mentioned. When those estimates are attacked, the burden of proof is necessarily on the plaintiffs who attack them.

Much weight should be attached to the judgment of the county commissioners, as they are the direct and immediate representatives elected by the people. They bear the approval of the people and are selected, presumably, because of their character and discretion. There are usually five of these representatives of the people, and they are generally selected from different sections of the county, and are, therefore, peculiarly well informed as to the county needs and interests. The commissioners constitute the local legislature, and it must be assumed that they will faithfully care for the interests of their constituents and will not needlessly cripple any county institutions. The County Board of Education is usually composed of only three persons and are generally not directly responsible to the people.

One of the reasons urged in recent Legislatures for requiring members of the Board of Education to be elected by the people is to make them more directly responsible to those who pay the taxes as well as cast the votes. The experience of a century has shown that those who expend the public money are rendered much more careful and economical when they are elected directly by the voters than when appointed to office.

In this case it appears that the increased valuation of property in Granville County has yielded over $1,500 additional school taxes, and for this reason it is urged the estimates of the commissioners are sufficiently high. Whether they took into consideration the expense of the four so-called high schools, the judge below will of course ascertain. It is presumed that they did.

We have had two controversies like this before this Court, and both were referred back to find the facts upon evidence. In both cases it was ascertained that the county commissioners had supplied ample funds to

support the schools of the county, and that the complaint of the boards of education were without real foundation.

For these reasons, I think the courts should be extremely careful and guarded in interfering with the estimates and budgets which the representatives of the people have deemed sufficient for the support of schools or any other county expense.