RONALD BRITT, ET AL. v. NORTH CAROLINA STATE BOARD OF EDUCATION, ET AL.

No. 8716SC63

(Filed 7 July 1987)

**Schools § 1; Constitutional Law § 20.2 — "equal educational opportunities" defined — method of financing schools proper — multiple school units in same county proper**

By mandating equal educational opportunities for all students, the framers of the North Carolina Constitution and the voters who adopted it were emphasizing that the days of "separate but equal" education in North Carolina were over, and that the people of this State were committed to providing all students with equal access to full participation in our public schools, regardless of race or other classification. The Constitution does not guarantee to each student in the State a fundamental right to an education substantially equal to that enjoyed by every other student in the State; therefore, plaintiffs could not assail the method prescribed by the Legislature for financing the operation of the public schools which resulted in greater opportunities in counties with a larger tax base, nor could they challenge the operation of five separate administrative school units in their county. Art. IX, § 2(1) and Art. I, §§ 1, 15 and 19 of the N. C. Constitution.

APPEAL by plaintiffs from *Bowen, Judge*. Order entered 27 August 1986 in Superior Court, ROBESON County. Heard in the Court of Appeals 9 June 1987.

This is an action for declaratory and injunctive relief. Plaintiffs are minors who are now, or will be in the future, enrolled in public schools in Robeson County, and the parents or legal guardians of said minors. Defendants are the North Carolina State

Board of Education, its members, the Superintendent of Public Instruction for the State of North Carolina, the five Boards of Education which operate and administer the five separate public school units in Robeson County, the individual members of those boards, and the superintendents for the respective school systems.

In their complaint, plaintiffs allege, in summary, that the present statutory system of financing public schools in North Carolina results in inequities in educational programs and facilities between the public schools within Robeson County, which has a relatively low tax base from which to draw funds, and those in other counties with relatively high tax bases. Plaintiffs further allege that the operation of five separate school systems in Robeson County prohibits effective use of facilities and staff and promotes inequitable use of State and local funds. Plaintiffs allege that, as a result of these situations, they are "being deprived of equal opportunity to a free public school education in violation of Article IX, Section 2(1), and Article I, Sections 1, 15 and 19, of the Constitution of the State of North Carolina." Plaintiffs do not allege discrimination on the part of defendants, nor do they allege that they are a suspect class. They seek as relief declaratory judgments holding "that the system of financing public education in this state, at least as it affects the County of Robeson, violates the Constitution of the State of North Carolina," and that the "administration of five separate administrative school units in Robeson County violates the Constitution of the State of North Carolina. . . ." Plaintiffs also pray for permanent injunctions ordering defendants to cease implementing the current system of financing schools, prohibiting the administration and operation of five separate school systems in Robeson County, and ordering defendants to proceed immediately with consolidation of the separate systems into one administrative unit.

All defendants except the Robeson County School Board, its members and superintendent, moved to dismiss the complaint pursuant to G.S. 1A-1, Rules 12(b)(1) and (6). The trial court dismissed the complaint as to the moving defendants and, pursuant to Rule 54(b), found no just reason for delay and entered a final judgment as to those defendants. Plaintiffs appeal.

*Lumbee River Legal Services, Inc., by Julian T. Pierce and T. Diane Phillips; and Locklear, Brooks, Jacobs & Sutton, by Dexter Brooks, for plaintiff-appellants.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Edwin M. Speas, Jr., and Assistant Attorney General Laura E. Crumpler, for defendant-appellees North Carolina State Board of Education, its members and Superintendent.*

*Hal Kinlaw, Jr., for defendant-appellees St. Pauls City Board of Education, its members and Superintendent.*

*J. M. McManus, for defendant-appellees Red Springs City Board of Education, its members and Superintendent.*

*John Wishart Campbell for defendant-appellees Lumberton City Board of Education, its members and Superintendent.*

*Frank Floyd, Jr., for defendant-appellees Fairmont City Schools, its members and Superintendent.*

MARTIN, Judge.

This appeal is taken from the order granting the motion of most, but not all, defendants to dismiss the complaint for lack of subject matter jurisdiction, pursuant to G.S. 1A-1, Rule 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to G.S. 1A-1, Rule 12(b)(6). Because the Robeson County Board of Education, its members and Superintendent, did not join in the motion, the order appealed from does not finally dispose of all issues in the case as to all parties. Normally, appeals taken from such an order are interlocutory and are properly dismissed. G.S. 1A-1, Rule 54(b); *Tridyn Industries, Inc. v. American Mutual Ins. Co.*, 296 N.C. 486, 251 S.E. 2d 443 (1979). The trial court, however, found no just reason for delay and entered final judgment as to the moving defendants, releasing the case for immediate appeal before completion of all the litigation. G.S. 1A-1, Rule 54(b); *Tridyn Industries, supra.*

For the purposes of defendants' motion to dismiss for failure of plaintiffs' complaint to state a claim for relief, the material allegations of the complaint must be treated as true. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). Conclusions of law or unwarranted deductions of fact, however, are not so treated. *Id.*

Where it is clear from the complaint that, under any set of facts which could be proved in support of their claim, plaintiffs are not entitled to any relief, the motion to dismiss is properly granted. *Id.*

Plaintiffs attempt to assert two distinct claims for relief in this action: the first assails the method prescribed by the Legislature for financing the operation of the public schools in this State; the second challenges the operation of five separate administrative school units in Robeson County. Both claims are predicated upon what plaintiffs contend is a denial of a fundamental right to equal educational opportunity guaranteed them by Article I, § 15 and Article IX, § 2(1) of the North Carolina Constitution. Article I, § 15 provides:

> The people have a right to the privilege of education, and it is the duty of the State to guard and maintain that right.

Article IX, § 2(1) provides:

> The General Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools, which shall be maintained at least nine months in every year, and wherein equal opportunities shall be provided for all students.

Plaintiffs argue that the foregoing provisions confer upon them a "fundamental right to equal educational opportunity," that is to say that each student in the State has a fundamental right to an education substantially equal to that enjoyed by every other student in the State, and that the present statutory scheme for financing public education violates that right. According to their argument, the present system is constitutionally impermissible because it requires the State to provide flat rate grants to local school administrative units based solely upon the average number of pupils in attendance, without taking into account other factors affecting the units' needs for financial assistance. Responsibility for building, maintaining and improving facilities, as well as the responsibility for other costs involved in providing educational resources and services, is placed upon the local school boards, resulting in disparities in the educational opportunities which might be offered by counties with a large tax base, as opposed to those offered in counties such as Robeson which may not have an

adequate tax base to adequately fund the facilities required by the statute. They also contend that the multiple school systems in Robeson County fragment the pupil population to such an extent that educational programs available to some students in the county are not available to others who are in a different school system.

The outcome of this appeal depends entirely upon the interpretation to be given the constitutional provisions relied upon by plaintiffs. If we interpret them as urged by plaintiffs, the complaint would adequately allege justiciable violations of the asserted right; otherwise the facts alleged by plaintiff do not give rise to a claim for which the courts may afford redress. For the reasons which follow, we affirm the judgment of the trial court.

The standards of constitutional interpretation are well established. It is elementary that the Constitution is a limitation, not grant, of power. *Mitchell v. N.C. Indus. Dev. Financing Auth.*, 273 N.C. 137, 159 S.E. 2d 745 (1968). Fundamental to the interpretation of provisions of the Constitution is the principle that effect be given to the intent of the framers of the document and of the people adopting it. *Perry v. Stancil*, 237 N.C. 442, 75 S.E. 2d 512 (1953). More importance is to be placed upon the intent and purpose of a provision than upon the actual language used. *Id.* "Inquiry must be had into the history of the questioned provision and its antecedents, the conditions that existed prior to its enactment, and the purposes sought to be accomplished by its promulgation." *Sneed v. Board of Education*, 299 N.C. 609, 613, 264 S.E. 2d 106, 110 (1980). "The meaning of a constitution is to be found, not in a slavish adherence to the letter, which sometimes killeth, but in the discovery of its spirit, which giveth life." *Opinions of the Justices*, 204 N.C. 806, 813, 172 S.E. 474, 478 (1933).

Article IX, § 2(1) of our present constitution, which was adopted by the voters of this State on 3 November 1970, is similar to Article IX, § 2 of the Constitution of 1868, which read as follows:

> *General Assembly shall provide for schools; separation of the races.* — The General Assembly, at its first session under this Constitution, shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all children of the

State between the ages of six and twenty-one years. And the children of the white race and the children of the colored race shall be taught in separate public schools; but there shall be no discrimination in favor of, or to the prejudice of, either race.

"Separate but equal" education, such as mandated by the 1868 Constitution was, of course, declared violative of the federal Constitution by the United States Supreme Court in *Brown v. Board of Education*, 347 U.S. 483, 98 L.Ed. 2d 873, 74 S.Ct. 686, 38 A.L.R. 2d 1180 (1954).

In their commentary to the proposed constitution, the framers of the 1970 constitution wrote:

Article IX has been rearranged to improve the order of treatment of the subjects dealt with by that article, and its language has been modified to eliminate obsolete provisions and to make the article reflect current practice in the administration and financing of schools . . . [i]t also authorizes units of local government to which the General Assembly assigns a share of the responsibility for financing public education to finance educational programs . . . from local revenues. It omits the now-unconstitutional language on the separation of the races in the public schools.

*Report of the North Carolina State Constitution Study Commission*, 34 (1968). The framers also noted that in their proposed constitution, which set forth Article IX, § 2(1) as it now appears, "editorial pruning, rearranging, rephrasing, and modest amendments occur. The more substantial changes have been reserved for handling in separate amendments." *Id.*, at 29.

The commentary, then, makes manifest the framers' intention that the new Constitution would not alter, but rather would reflect and preserve, the then current method of financing the State's public schools. At the time the Constitution was drafted and adopted, State law made it "the duty of the boards of education of the several administrative school units of the State to make provisions for the nine months' school term by providing adequate school buildings equipped with suitable school furniture and apparatus." G.S. 115-129 (1966) (Chapter 115 subsequently repealed, rewritten, and recodified as Chapter 115C, Sess. Laws

1981, c. 423, s.1). It was "the duty of the several boards of county commissioners to provide funds for the same." *Id.* State law further provided that:

> When funds accruing by law to the board of education are not sufficient to repair, maintain and insure properly the school plants of an administrative unit, it shall be the duty of the board of county commissioners in which such unit is located to supplement these funds by a tax levy and said board is so directed and authorized.

G.S. 115-80 (1966). *See also generally, Board of Education v. Board of Commissioners,* 26 N.C. App. 114, 214 S.E. 2d 412 (1975). Thus, under the financing scheme employed at the time of adoption of the 1970 Constitution, those counties with lower tax bases faced the same disadvantages as do counties with lower tax bases under the present financing scheme. Yet the framers clearly indicated their intent to make the new Constitution reflect that system.

Moreover, the Constitution itself contains provisions that contradict plaintiffs' arguments. The governing boards of units of local government having financial responsibility for public education are expressly authorized to "use local revenues to add to or supplement any public school or post-secondary school program." N. C. Const., Article IX, § 2(2). Clearly then, a county with greater financial resources will be able to supplement its programs to a greater degree than less wealthy counties, resulting in enhanced educational opportunity for its students. Furthermore, Article IX, § 7 of the Constitution requires that "the clear proceeds of all penalties and forfeitures and of all fines collected in the several counties for any breach of the penal laws of the State, shall belong to and remain in the several counties, and shall be faithfully appropriated and used exclusively for maintaining free public schools," creating yet another disparity between counties as to the financial resources available for supplementing the programs of the public schools. Both of these provisions obviously preclude the possibility that exactly equal educational opportunities can be offered throughout the State.

Plaintiffs cite *Sneed v. Board of Education, supra,* as authority for the proposition that there is a fundamental right to equal educational opportunities. In *Sneed,* the Supreme Court held that

a school board could assess small course fees without violating the mandate for free public schools contained in Article IX, § 2(1) of the Constitution. The Court stated that "[i]t is clear, then, that equal *access to participation* in our public school system is a fundamental right, guaranteed by our state constitution and protected by considerations of procedural due process." *Id.* at 618, 264 S.E. 2d at 113 (emphasis added). The fundamental right that is guaranteed by our Constitution, then, is to equal *access* to our public schools—that is, every child has a fundamental right to receive an education in our public schools. Furthermore, the State is given responsibility for overseeing the public schools of this State in order to ensure that every student in the State receives the education to which he or she is entitled. *Lane v. Stanley*, 65 N.C. 153 (1871). In the present case, plaintiffs have not alleged that they are being denied an education, but only that they are not receiving the same educational opportunities as students in some other places in the State. The State is required to provide a general and uniform education for the students in its charge. "There is no requirement that it provide identical opportunities to each and every student." *Kiddie Korner v. Board of Education*, 55 N.C. App. 134, 138-39, 285 S.E. 2d 110, 113 (1981), *appeal dismissed and cert. denied*, 305 N.C. 300, 291 S.E. 2d 150 (1982).

Plaintiffs contend that their argument does not require absolute equality from system to system, but rather requires only that the State cannot ignore the relative ability of counties to raise funds when disparities in county wealth deprive students of equal educational opportunity. However, if our Constitution demands that each child receive equality of opportunity in the sense argued by plaintiffs, only absolute equality between all systems across the State will satisfy the constitutional mandate. Any disparity between systems results in opportunities offered some students and denied others. Our Constitution clearly does not contemplate such absolute uniformity across the State.

The question remains, then, of what the mandate that "equal opportunities shall be provided for all students" does, in fact, guarantee. In our view, the only plausible way to interpret that provision is to relate it to the "separate but equal" phrase of the 1868 Constitution that it replaced. In *Brown v. Board of Education, supra*, the United States Supreme Court held that "segregation of children in public schools solely on the basis of race . . .

deprive[s] the children of the minority group of equal educational opportunities." *Id.* at 493, 98 L.Ed. 2d at 880, 74 S.Ct. at 691, 38 A.L.R. 2d at 1186. It is a fact of history, although a shameful one, that despite the Supreme Court's ruling in *Brown*, racial integration of the public schools in this State occurred neither quickly nor wholeheartedly. *See generally, Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 28 L.Ed. 2d 554, 91 S.Ct. 1267, *reh'g denied*, 403 U.S. 912, 29 L.Ed. 2d 689, 91 S.Ct. 2200, 2201 (1971); *Godwin v. Johnston County Board of Education*, 301 F. Supp. 1339 (E.D.N.C. 1969). By mandating equal opportunities for all students, the framers of the Constitution and the voters that adopted it were emphasizing that the days of "separate but equal" education in North Carolina were over, and that the people of this State were committed to providing all students with equal access to full participation in our public schools, regardless of race or other classifications. Any other interpretation, we believe, would require drawing inferences and conclusions that not only cannot be supported, but are, in fact, contradicted by the history surrounding the adoption of the Constitution.

Both of plaintiffs' claims for relief are premised upon the violation of a right which we have concluded does not exist in the context alleged by plaintiffs. Since no constitutional infirmity appears from the complaint, the only questions which it raises relate to the wisdom of the Legislature in providing for the present method of funding public education and in providing for and permitting five separate school systems to be maintained in Robeson County. These are matters of purely legislative concern.

> As to whether an act is good or bad law, wise or unwise, is a question for the Legislature and not for the courts—it is a political question. The mere expediency of legislation is a matter for the Legislature, when it is acting entirely within constitutional limitations, but whether it is so acting is a matter for the courts.

*Lowe v. Tarble*, 312 N.C. 467, 471, 323 S.E. 2d 19, 22 (1984), *aff'd on reh'g*, 313 N.C. 460, 329 S.E. 2d 648 (1985), *quoting State v. Warren*, 252 N.C. 690, 114 S.E. 2d 660 (1960).

Plaintiffs have alleged no facts which would support a claim for relief or confer jurisdiction upon the courts of the State. The judgment of the trial court is, therefore, affirmed.

Affirmed.

Judges BECTON and COZORT concur.