KATHLEEN M. LEANDRO, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF ROBERT A. LEANDRO; STEVEN R. SUNKEL, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* FOR ANDREW J. SUNKEL; CLARENCE L. PENDER, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF SCHNIKA N. PENDER; TYRONE T. WILLIAMS, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF TREVELYN L. WILLIAMS; D. E. LOCKLEAR, JR., INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF JASON E. LOCKLEAR; ANGUS B. THOMPSON, II, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF VANDALIAH J. THOMPSON; JENNIE G. PEARSON, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF SHARESE D. PEARSON; WAYNE TEW, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF NATOSHA L. TEW; DANA HOLTON JENKINS, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF RACHEL M. JENKINS; FLOYD VICK, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF ERVIN D. VICK; HOKE COUNTY BOARD OF EDUCATION; HALIFAX COUNTY BOARD OF EDUCATION; ROBESON COUNTY. BOARD OF EDUCATION; CUMBERLAND COUNTY BOARD OF EDUCATION; VANCE COUNTY BOARD OF EDUCATION; PLAINTIFF-APPELLEES, AND CASSANDRA INGRAM, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF DARRIS INGRAM; CAROL PENLAND, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF JEREMY PENLAND; DARLENE HARRIS, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF SHAMEK HARRIS; NETTIE THOMPSON, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF ANNETTE RENEE THOMPSON; DAVID MARTINEZ, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF DANIELA MARTINEZ; OPHELIA AIKEN, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF BRANDON BELL; ASHEVILLE CITY BOARD OF EDUCATION; BUNCOMBE COUNTY BOARD OF EDUCATION; CHARLOTTE-MECKLENBURG BOARD OF EDUCA-TION; DURHAM PUBLIC SCHOOLS BOARD OF EDUCATION; WAKE COUNTY BOARD OF EDUCATION; WINSTON-SALEM/FORSYTH COUNTY BOARD OF EDU-CATION, PLAINTIFF-INTERVENOR-APPELLEES V. STATE OF NORTH CAROLINA; STATE BOARD OF EDUCATION; DEFENDANT-APPELLANTS

No. COA95-321

(Filed 19 March 1996)

**1. Constitutional Law § 94 (NCI4th)— school funding system— general and uniform clause—equal opportunities clause**

The trial court erred in denying defendant's Rule 12(b)(6) motion to dismiss plaintiffs' claims that the state school funding

1

system violates the "general and uniform" and "equal opportunities" clauses of Article IX, § 2(1) of the North Carolina Constitution, since the uniformity required is *system* uniformity, as contended by defendant, and not spending or programming uniformity, as contended by plaintiffs; and the Constitution provides no fundamental right to equal educational opportunities, but simply equal access to the public schools.

**Am Jur 2d, Schools §§ 5, 216, 252.**

**De facto segregation of races in public schools. 11 ALR3d 780.**

**Validity of basing public school financing system on local property taxes. 41 ALR3d 1220.**

**2. Constitutional Law § 94 (NCI4th)— constitutional right to education—equal access protected—no qualitative standard**

The fundamental educational right under the North Carolina Constitution is limited to one of equal access to education, and it does not embrace a qualitative standard; therefore, plaintiffs' claims that the Constitution provides a fundamental right to adequate educational opportunities and that the State violated that right by its system for funding public education should have been dismissed for failure to state a claim upon which relief could be granted.

**Am Jur 2d, Schools §§ 5, 216, 252.**

**De facto segregation of races in public schools. 11 ALR3d 780.**

**Validity of basing public school financing system on local property taxes. 41 ALR3d 1220.**

**3. Constitutional Law § 94 (NCI4th)— educational funding— due process and equal protection claims—no fundamental right to adequate educational opportunities**

The trial court erred in denying defendant's motion to dismiss plaintiffs' equal protection and due process claims where plaintiffs argued that under the State's educational funding system the opportunities they received were substantially inferior to those offered to children in wealthy school districts since this claim was based on an asserted fundamental right to adequate educa-

tional opportunities, and a constitutional fundamental right to adequate educational opportunities does not exist.

**Am Jur 2d, Schools § 45.**

**De facto segregation of races in public schools. 11 ALR3d 780.**

**Validity of basing public school financing system on local property taxes. 41 ALR3d 1220.**

4. **Schools § 51 (NCI4th)— failure of defendant to provide necessary resources—no right to adequate education—no statutory basis for claim**

The trial court erred in denying defendant's Rule 12(b)(6) motion to dismiss plaintiffs' claims that the State has violated certain provisions of N.C.G.S. Ch. 115C by failing to provide necessary resources for instructional purposes on an equal basis since statutory claims based on violations of the nonexistent fundamental right to an adequate education must fail; the statutory provisions themselves provide no basis for relief; and some of the provisions under which plaintiffs claim apply only to schoolchildren with special needs. N.C.G.S. §§ 115C-1, 115C-81, 115C-122(3), and 115C-408.

**Am Jur 2d, Schools § 216.**

**Validity and construction of statute or ordinance limiting the kinds or amount of actual damages recoverable in tort action against governmental unit. 43 ALR4th 19.**

Appeal by defendants from order entered 1 February 1995 by Judge E. Maurice Braswell in Halifax County Superior Court. Heard in the Court of Appeals 24 January 1996.

This appeal arises from a declaratory judgment action against the State of North Carolina and the State Board of Education (hereinafter collectively, the State) challenging the State's method for financing the public school system. Plaintiffs filed a complaint on 25 May 1994 and an amended complaint on 26 September 1994, seeking a declaration, among others, that North Carolina's public education system, including its system of funding, violates the North Carolina Constitution (hereinafter the Constitution) and various state statutes by failing to provide adequate and substantially equal educational opportunities for all schoolchildren in the state. On 17 October 1994

the trial court allowed the intervention of plaintiff-intervenors, and they filed a complaint on 18 October 1994, seeking declarations that the State has failed to fulfill its duty to establish a general and uniform system of free public schools with equal educational opportunities for all students and that it has failed to fulfill its duty to provide an adequate system of public schools in the urban school districts.

Plaintiffs are five boards of education in low-wealth school districts and twenty individuals in those districts who allege generally that the State has failed in numerous respects to satisfy its obligations under the Constitution and N.C. Gen. Stat. Chapter 115C by maintaining a system for funding public schools that does not take sufficient account of the substantial disparities in wealth among school districts.

More specifically, plaintiffs complain that there is a large gap in educational opportunities between their districts and wealthier ones as demonstrated by their dilapidated school facilities, short supply of textbooks, and limited curricula, among other things, all leading to difficulty in attracting and attaining qualified teachers. The result, they argue, is a lack of adequate educational opportunities reflected in part by low test scores. Plaintiffs assert that the root of the problem is the State's system for funding public education, which delegates to local governments the responsibility for capital expenses and some current school expenses. These funds are raised by property taxes, and plaintiff districts' property tax bases are lower than other counties, requiring greater tax effort. The greater tax effort, however, does not make up differences in per pupil funding, and plaintiffs claim that they still receive less funding per pupil than wealthy districts.

In addition, plaintiffs argue that the State's supplemental funding program for low-wealth school districts does not provide them with funding sufficient to support an adequate education. They also maintain that they do not have access to programs required by the State's Basic Education Program (BEP), set forth in N.C. Gen. Stat. § 115C-81. Thus, the State's funding system, plaintiffs allege, results in inadequate funding, which leads to inadequate and unequal educational opportunities.

Plaintiff-intervenors, six boards of education in urban districts and twelve individuals in those districts, allege generally that the State is failing to meet its constitutional and statutory obligations by "failing to implement a public education system that adequately and

**LEANDRO v. STATE OF NORTH CAROLINA**

[122 N.C. App. 1 (1996)]

equitably takes into account the educational and resource needs of all students and school districts." They claim that some students in urban districts, especially those who live in or near poverty, "face environmental and other disadvantages that require more educational resources than the State currently provides if they are to receive an adequate education." Other students require special education services, English-as-a-second-language services, and academically gifted services, which require the urban school boards to "divert substantial resources from their regular education programs."

Moreover, plaintiff-intervenors claim that "the State has failed to address sufficiently the high costs and 'municipal overburden' that characterize the urban school districts." They assert that the BEP, even if fully funded, would not meet their needs. In sum, plaintiff-intervenors argue that the State has "failed to provide sufficient resources to enable the urban school boards to provide all of their students with an adequate education," and the school funding system "is inequitable, irrational, arbitrary and capricious, in violation of the North Carolina Constitution and State law."

Defendants filed a motion to dismiss the complaints of both plaintiffs and plaintiff-intervenors (hereinafter collectively, plaintiff parties), asserting defenses, under N.C. Gen. Stat. § 1A-1, Rules 12(b)(1), (2), and (6), that the trial court lacked subject matter and personal jurisdiction and that plaintiff parties failed to state any claim upon which relief can be granted. Defendants also requested a transfer of venue to Wake County, which was granted. After a hearing on 9 and 10 January 1995, Judge E. Maurice Braswell denied defendants' motions to dismiss.

Defendants filed a timely notice of appeal of the order denying their motions to dismiss. The parties then filed a joint petition in the Supreme Court for discretionary review, which was denied on 11 April 1995. Subsequently, defendants filed an alternative petition for writ of certiorari in this Court pursuant to Rule 21 of the North Carolina Rules of Appellate Procedure. The petition was allowed on 4 May 1995.

*Attorney General Michael F. Easley, by Senior Deputy Attorney General Edwin M. Speas, Jr., Special Deputy Attorney General Tiare B. Smiley, and Special Deputy Attorney General Ronald M. Marquette, for defendant appellants.*

*Parker, Poe, Adams & Bernstein L.L.P., by Robert W. Spearman, Robert H. Tiller, and Heman R. Clark, and Hux Livermon &*

*Armstrong, by H. Lawrence Armstrong, Jr., for plaintiff appellees.*

*Smith Helms Mulliss & Moore, L.L.P., by Gary R. Govert, and Hogan & Hartson, L.L.P., by Allen R. Snyder, for plaintiff-intervenor appellees.*

ARNOLD, Chief Judge.

Although denial of a motion to dismiss under N.C. Gen. Stat. § 1A-1, Rule 12(b)(2) is immediately appealable, *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327, 293 S.E.2d 182, 184 (1982), denial of a motion to dismiss under Rule 12(b)(1) or 12(b)(6) is ordinarily interlocutory and not immediately appealable. *Id.* at 326-27, 293 S.E.2d at 183-84. Pursuant to Rule 21 of the North Carolina Rules of Appellate Procedure, however, petition for writ of certiorari was allowed in order to review the trial court's order denying the motions to dismiss under G.S. § 1A-1, Rules 12(b)(1), (2), and (6).

The standard for ruling on a motion to dismiss under Rule 12(b)(6) is

> whether the pleading is legally sufficient to state a cause of action. In ruling on the motion, the allegations of the complaint are treated as true, and on that basis the trial court must determine as a matter of law whether the allegations state a claim for which relief may be granted. The " 'issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.' "

*Morris v. Plyler Paper Stock Co.*, 89 N.C. App. 555, 556-57, 366 S.E.2d 556, 558 (1988) (citations omitted). Moreover, a 12(b)(6) motion

> is seldom appropriate "in actions for declaratory judgments, and will not be allowed simply because the plaintiff may not be able to prevail." The motion is allowed only when "there is no basis for declaratory relief, as when the complaint does not allege an actual, genuine existing controversy."

*Id.* at 557, 366 S.E.2d at 558 (citations omitted).

As a preliminary matter, we recognize that education is primarily the responsibility of parents, teachers, and state and local school officials, and not of state judges. *See Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 273, 98 L. Ed. 2d 592, 606 (1988) (expressing the same reservations about the role of federal judges in education).

Judicial intervention in educational issues is appropriate only when a constitutional right is " 'directly and sharply implicate[d].' " *Id.*, 98 L. Ed. 2d at 607 (citation omitted).

[1] The State first argues that the trial court erred in denying its Rule 12(b)(6) motion to dismiss plaintiff parties' claims that the school funding system violates the "general and uniform" and "equal opportunities" clauses of Article IX, § 2(1) of the Constitution. The State contends that the structure of its educational system is indeed general and uniform and argues that this Court's decision in *Britt v. N.C. State Board of Education*, 86 N.C. App. 282, 357 S.E.2d 432, *disc. review denied and appeal dismissed*, 320 N.C. 790, 361 S.E.2d 71 (1987), forecloses plaintiff parties' "equal opportunities" claims. We agree.

Article IX, § 2(1) of the present Constitution, as amended in 1970, provides:

> The General Assembly shall provide by taxation and otherwise for a general and uniform system of free public schools, which shall be maintained at least nine months in every year, and wherein equal opportunities shall be provided for all students.

Plaintiffs claim that the State's educational funding system is not constitutionally "general and uniform" because "the quality of the education programs and amounts of funding vary substantially between plaintiff school districts and wealthy school districts." Plaintiff-intervenors similarly argue that the State does not meet its constitutional mandate to provide a general and uniform system of public schools because the "educational financing system fails properly to take account of the significant differences in the educational and resource needs of students and school districts throughout the State."

The State responds that the "general and uniform" language of Article IX, § 2(1) refers to uniformity not in its educational programs or facilities, but in the State's *system* of public education. Plaintiffs argue that the State's emphasis on the organization and administration of the educational system is misplaced, maintaining that the "general and uniform" language "at its origin was understood to require a school system that treated schoolchildren throughout the State with substantial equality." Plaintiff-intervenors similarly claim that the State "miss[es] the essential point of having a 'general and uniform system.' "

Cases interpreting the "general and uniform" clause, however, clearly contradict plaintiffs' arguments. In *Lane v. Stanly*, 65 N.C. 153 (1871), the Supreme Court offered an early examination of the "general and uniform" clause of Article IX, observing that

> it is to be a "system," it is to be "general," and it is to be "uniform." It is not to be subject to the caprice of localities, but every locality, yea, every child, is to have the same advantage, and be subject to the same rules and regulations.
>
> . . . [I]f every township were allowed to have its own regulations, and to consult its own caprices . . . [t]here would be no "uniformity" and but little usefulness, and the great aim of the government in giving all of its citizens a good education would be defeated.

*Id.* at 157-58. While plaintiffs urge that *Lane* reinforces the requirement of substantial equality, we find that the Court simply interpreted the "general and uniform" provision to ensure a system of public education that was administered uniformly across the state.

In *Board of Education v. Board of Commissioners*, 174 N.C. 469, 93 S.E. 1001 (1917), the Supreme Court reinforced its limited interpretation of the "general and uniform" clause:

> The term "uniform" here clearly does not relate to "schools," requiring that each and every school in the same or other districts throughout the State shall be of the same fixed grade, regardless of the age or attainments of the pupils, but the term has reference to and qualifies the word "system" and is sufficiently complied with where, by statute or authorized regulation of the public-school authorities, provision is made for establishment of schools of like kind throughout all sections of the State and available to all of the school population of the territories contributing to their support.

*Id.* at 473, 93 S.E. at 1002. We agree with the State that the uniformity required is *system* uniformity, not spending or programming uniformity, as plaintiff parties contend. Their claims pursuant to the "general and uniform" clause of the Constitution should have been dismissed under Rule 12(b)(6).

Plaintiffs also claim that the State's educational funding system fails to provide equal educational opportunities for all children because the opportunities available to them are substantially inferior

to those in wealthy school districts. The plaintiffs in *Britt* made a similar claim, arguing that Article I, § 15 and Article IX, § 2(1) of the Constitution conferred upon them a fundamental right to equal educational opportunity, "that is to say that each student in the State has a fundamental right to an education substantially equal to that enjoyed by every other student in the State, and that the present statutory scheme for financing public education violates that right." *Britt*, 86 N.C. App. at 285, 357 S.E.2d at 434. Rejecting this claim, *Britt* established that the Constitution provides no fundamental right to equal educational opportunities, but simply "equal *access* to our public schools—that is, every child has a fundamental right to an education in our public schools." *Id.* at 289, 357 S.E.2d at 436 (citing *Sneed v. Board of Education*, 299 N.C. 609, 618, 264 S.E.2d 106, 113 (1980)).

To state a valid claim for relief, plaintiffs must therefore distinguish their "equal opportunities" claims from those of the plaintiffs in *Britt*. Plaintiffs argue that their claim is for *substantial* rather than *absolute* equality among school systems. They urge that *Britt* is inapplicable to their case because the Court "did not address itself to a claim for 'substantial equality, rather than absolute equality.' " We disagree.

In *Britt*, the plaintiffs similarly argued that their claim did not require absolute equality among systems, "but rather . . . that the State cannot ignore the relative ability of counties to raise funds when disparities in county wealth deprive students of equal educational opportunity." *Britt*, 86 N.C. App. at 289, 357 S.E.2d at 436. We find plaintiffs' claim in the instant case indistinguishable. The *Britt* Court found that the Constitution contemplated "disparit[ies] between counties as to the financial resources available," *id.* at 288, 357 S.E.2d at 435-36, and concluded that

> if our Constitution demands that each child receive equality of opportunity in the sense argued by plaintiffs, only absolute equality between all systems across the State will satisfy the constitutional mandate. Any disparity between systems results in opportunities offered some students and denied others. Our Constitution clearly does not contemplate such absolute uniformity across the State.

*Id.* at 289, 357 S.E.2d at 436. The plaintiffs in *Britt* did not argue for absolute equality, but the Court recognized that the equality they sought could only be absolute. The same is true for plaintiffs' equal

opportunities claim, and we find that their claim under the "equal opportunities" clause of Article IX, § 2(1) of the Constitution is foreclosed by our decision in *Britt*. The trial court erred in not dismissing this claim pursuant to Rule 12(b)(6).

Plaintiff-intervenors also attempt to distinguish their "equal opportunities" claim from that in *Britt*, contending that "each North Carolina student, regardless of where he or she lives, has an equal right to funding sufficient to provide him or her with an adequate education. . . . The right the urban plaintiffs seek to enforce, therefore, is not a right to equal *funding*, but a right to equal *opportunity*." Although plaintiff-intervenors' claim might be distinguished from the plaintiffs' unsuccessful claim in *Britt*, the *Britt* Court's analysis of the limited purpose of the "equal opportunities" clause applies with the same force to bar plaintiff-intervenors' claim.

Discussing the origin of the "equal opportunities" clause, added to the Constitution by amendment in 1970, the *Britt* Court declared:

> In our view, the only plausible way to interpret that provision is to relate it to the "separate but equal" phrase of the 1868 Constitution that it replaced. . . . By mandating equal opportunities for all students, the framers of the Constitution and the voters that adopted it were emphasizing that the days of "separate but equal" education in North Carolina were over, and that the people of this State were committed to providing all students with equal access to full participation in our public schools, regardless of race or other classifications. Any other interpretation, we believe, would require drawing inferences and conclusions that not only cannot be supported, but are, in fact, contradicted by the history surrounding the adoption of the Constitution.

*Id.* at 289-90, 357 S.E.2d at 436. Although plaintiff-intervenors' claim may not mirror that of the plaintiffs in *Britt*, it nevertheless fails to state a claim for relief according to the *Britt* Court's interpretation of the "equal opportunities" clause.

As in *Britt*, both plaintiffs' and plaintiff-intervenors' claims for relief are "premised upon the violation of a right which we have concluded does not exist in the context alleged . . . ." *Id.* at 290, 357 S.E.2d at 436-37. The trial court should have granted the State's motion to dismiss plaintiff parties' equal opportunities claims pursuant to Rule 12(b)(6).

**[2]**  In its second assignment of error, the State argues that the trial court erred in denying its Rule 12(b)(6) motion to dismiss plaintiff parties' claims that they have a fundamental constitutional right to adequate educational opportunities. We agree.

Plaintiff parties claim that the State's system for funding public education violates their alleged fundamental constitutional right to adequate educational opportunities because it has failed to provide the necessary funds. They maintain that although the Constitution does not expressly provide for "adequate" educational opportunities, the framers intended to impose an adequacy standard. The State responds that the Constitution is silent on the issue of "adequate education," and that there is no such constitutional right.

Article I, § 15 of the Constitution provides that "[t]he people have a right to the privilege of education," and the State asserts that this "privilege" simply denotes *access* to education and does not command any qualitative standard. Indeed, our Supreme Court in *Sneed v. Board of Education*, 299 N.C. 609, 264 S.E.2d 106 (1980), examined this constitutional provision along with Article IX, § 2(1), and held: "It is clear, then, that equal access to participation in our public school system is a fundamental right, guaranteed by our state constitution and protected by considerations of procedural due process." *Id.* at 618, 264 S.E.2d at 113. The *Britt* Court reiterated *Sneed*'s declaration, holding that "[t]he fundamental right that is guaranteed by our Constitution, then, is to equal *access* to our public schools—that is, every child has a fundamental right to receive an education in our public schools." *Britt*, 86 N.C. App. at 289, 357 S.E.2d at 436.

We hold that under *Sneed* and *Britt*, the fundamental educational right under the North Carolina Constitution is limited to one of equal access to education, and it does not embrace a qualitative standard. As in *Britt*, plaintiff parties here "have not alleged that they are being denied an education . . . ." *Id.* Thus, their claims that the Constitution provides a fundamental right to *adequate* educational opportunities, and that the State has violated that alleged right, should have been dismissed for failure to state a claim upon which relief can be granted.

The State contends in the alternative that plaintiff parties' educational adequacy claims present nonjusticiable political questions, and the trial court should have dismissed these claims for lack of jurisdiction pursuant to Rules 12(b)(1) and 12(b)(2). Because we find that plaintiff parties' educational adequacy claims should have been dis-

missed pursuant to Rule 12(b)(6), we decline to address this contention.

**[3]** The State argues in its third assignment of error that the trial court erred in denying its Rule 12(b)(6) motion to dismiss plaintiff parties' equal protection and due process claims. We agree.

Plaintiffs assert that the State has denied them the equal protection of the laws guaranteed under Article I, § 19 of the Constitution because of the substantial disparities in school funding that result from the State's educational finance system. To trigger strict scrutiny in considering an equal protection claim, "it is necessary that there be a preliminary finding that there is a suspect classification or an infringement of a fundamental right." *Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 11, 269 S.E.2d 142, 149 (1980). Plaintiff parties do not claim that they comprise a suspect class, but rather that the State has infringed an alleged fundamental right.

Although plaintiffs' claim on its face simply maintains that the State has violated their fundamental right to education, the substance of their allegation shows that they base their equal protection claim on an asserted fundamental right to *adequate* educational opportunities. They argue that the State violates equal protection because under its educational funding system the educational opportunities they receive are substantially inferior to those offered to children in wealthy school districts. Plaintiff-intervenors claim that the State has denied them equal protection because its supplemental funding scheme irrationally discriminates against school districts not defined as "low wealth" or "small" and fails to provide them with an adequate education. Their equal protection claim is also premised upon the assertion that they have a fundamental right to an adequate education.

Since we found above that a constitutional fundamental right to adequate educational opportunities does not exist, it follows that plaintiff parties' equal protection claims, based on this asserted fundamental right, necessarily fail. The trial court should have dismissed their equal protection claims pursuant to Rule 12(b)(6).

Plaintiff parties also base due process claims upon the assertion that they have a fundamental right to adequate educational opportunities. Plaintiffs argue that this alleged fundamental right "may not be withheld or eliminated except in accordance with due process," as guaranteed under the law of the land clause of Article I, § 19 of the

Constitution. They maintain that under substantive due process analysis, strict scrutiny should be applied to invalidate any limitation on a fundamental right not justified by a compelling State interest. *See In re Moore*, 289 N.C. 95, 101-02, 221 S.E.2d 307, 311-12 (1976) (citing *Roe v. Wade*, 410 U.S. 113, 35 L. Ed. 2d 147 (1973)). However, we established above that there is no fundamental right to adequate educational opportunities, and absent a properly asserted fundamental right, plaintiff parties' substantive due process claims cannot be maintained.

Plaintiffs claim in addition that "compelling schoolchildren to attend schools without providing adequate educational opportunities is a deprivation of their liberty that requires due process of law under the state Constitution." Plaintiff-intervenors claim both property and liberty interests in education and allege that "[b]ecause the State has failed to provide the individual intervenors with adequate educational programs and facilities, they have been denied due process of law." We find that plaintiff parties' additional due process claims present no genuine controversy, and we reverse the trial court's denial of the State's Rule 12(b)(6) motion to dismiss all of their due process claims.

[4] In its fourth assignment of error, the State contends that the trial court erred in denying its Rule 12(b)(6) motion to dismiss plaintiff parties' statutory claims for relief based upon provisions of N.C. Gen. Stat., Chapter 115C. Plaintiffs allege that the State has violated the requirements of certain provisions of Chapter 115C by failing to provide them with equal access to the BEP and "by failing to assure that plaintiffs receive necessary resources for instructional purposes on an equitable basis." Plaintiff-intervenors similarly claim that by failing to provide necessary resources, the State has failed to meet its statutory obligations under Chapter 115C to provide adequate and equal educational opportunities. The State contends that plaintiff parties' statutory claims are not actionable. We agree.

Plaintiff parties assert that certain provisions of Chapter 115C affirm their alleged constitutional fundamental right to an adequate education, and other provisions must be carried out in accordance with this fundamental right. However, we found above that there is no constitutional fundamental right to adequate education. Therefore, plaintiff parties' statutory claims, all based on violations of this nonexistent fundamental right, necessarily fail.

Moreover, the specific statutory provisions themselves provide no basis for relief. First, G.S. § 115C-1 simply codifies the "general and uniform" and "equal opportunities" clauses of the Constitution, which we found above to provide no cognizable claim, and it affords no additional basis for relief. Next, the BEP, set forth in G.S. § 115C-81, simply directs the State Board to adopt and implement a program of basic instruction in specified areas and declares that the goal of the General Assembly is to provide funds to implement the BEP. Accordingly, it confers no actionable rights upon plaintiff parties.

Plaintiffs' claim under G.S. § 115C-122(3) is likewise without merit. This provision is contained in Article 9 of Chapter 115C, which applies only to schoolchildren with special needs as defined under G.S. § 115C-109. Plaintiffs do not assert, however, that they fall within the purview of Article 9. In addition, plaintiff-intervenors' complaint does not on its face state a claim under G.S. § 115C-122(3). Thus, plaintiff parties' attempts to extract language from this provision and apply it generally, outside the context of Article 9, are not persuasive.

Finally, G.S. § 115C-408 simply declares the State's policy to provide from state revenue the instructional expenses for current operations of the public school system and indicates that "the facilities requirements for a public education system will be met by county governments." As a policy statement, the statutory provision confers no actionable right upon plaintiff parties, and their claims under this statute also fail.

In its last assignment of error, the State argues that the trial court erred in denying its motions to dismiss under Rule 12(b)(1) and (2) for lack of subject matter and personal jurisdiction, claiming as affirmative defenses the doctrine of sovereign immunity, the lack of standing on the part of the plaintiff boards of education, and the contention that the constitutionality of no statute is properly at issue under the Declaratory Judgment Act. Because we reverse the trial court and dismiss both plaintiffs' and plaintiff-intervenors' complaints pursuant to Rule 12(b)(6) for failure to state cognizable claims, we need not consider the State's jurisdictional arguments.

The trial court's order denying the State's motions to dismiss is

Reversed.

Judges LEWIS and WALKER concur.